AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Gray Apple iPad   Model: A2602
Serial: GT9VCXY47D
("Target Device 3")

Case No. '23 MJ3915

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841, 846 | Possession With Intent to Distribute Controlled Substance, Conspiracy |
| 21 USC Sec. 952, 960, 963 | Importation of Controlled Substance, Conspiracy |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Dean Page, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by   telephone   *(specify reliable electronic means)*.

Date:   October 27, 2023

*Judge's signature*

City and state:   San Diego, California         Hon. Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Dean Page, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices, (Collectively, the **"Target Devices"**):

> Green Apple iPhone
> Seizure No. 2024250100005301-0003
> (**"Target Device 1"**)
>
> Black Nokia TA-1584
> Seizure No. 2024250100005301-0004
> IMEI: 354668350169732
> (**"Target Device 2"**)
>
> Gray Apple iPad
> Model: A2602
> Serial: GT9VCXY47D-0006
> (**"Target Device 3"**)

as further described in Attachments A-1, A-2, and A-3, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Luis Humberto AREVALO ("Defendant") for the offense of possession with intent to distribute approximately 53.12 kilograms (117 pounds) of Cocaine. The **Target Devices** are currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement.

Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December of 2021. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry, as well as methods of transporting and distributing narcotics further into the United States.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and other electronic devices with telecommunications access, such as tablets. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry. And Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the

importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States. Once delivered to a secondary co-conspirator or transporter within the United States, narcotics traffickers will routinely continue to use cellular telephones and tablets to coordinate further distribution efforts. For example, narcotics traffickers will use mobile devices in efforts to compartmentalize the activities of different actors within a conspiracy by relaying specific instructions and locations of meeting sites and stash houses, frequently using end-to-end encrypted messaging applications from which data may be obtained through a search of the mobile device, but not from the internet service provider.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones and tablets (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the mobile device. Specifically, searches of mobile devices (including cellular telephones and tablets) of individuals involved in the importation of narcotics may yield evidence:

   a.  tending to indicate efforts to manufacture, distribute, or dispense controlled substances within and throughout the United States, or to possess controlled substances with the intent to do the same;

   b.  tending to indicate efforts to import controlled substances from Mexico into the United States;

   c.  tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to

    facilitate the importation of controlled substances from Mexico into the United States, and the further manufacture or distribution of controlled substances within and throughout the United States;

  d. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States, as well as the manufacture or distribution of controlled substances within and throughout the United States;

  e. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States and/or the manufacture or distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

  f. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

  g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

## FACTS SUPPORTING PROBABLE CAUSE

7. On October 25, 2023, Homeland Security Investigations (HSI) Special Agents (SA), conducted surveillance operations on a 2015 Chevrolet Silverado bearing a California license plate (VEHICLE 1), driven by a Hispanic male ("HM-1"). At approximately 2:58 PM, agents witnessed a silver 2018 Nissan Sentra bearing California license plate 8TND447 (VEHICLE 2), park parallel to VEHICLE 1. At this time, agents witnessed the driver of VEHICLE 2, later identified as Luis Humberto AREVALO, the Defendant, open his trunk from the outside of VEHICLE 2. AGENTS then witnessed HM-1 remove brick-shaped packages wrapped in plastic from VEHICLE 1 and place the packages inside the trunk of VEHICLE 2. At approximately 3:00 PM, agents witnessed the Defendant enter VEHICLE 2 and depart westbound.

8. Returning to October 25, 2023, at approximately 3:05 pm, agents witnessed VEHICLE 2 leave the vicinity of HM-1 and VEHICLE 1, and park in front of, 2264 Donax

Avenue, San Diego, CA 92154. At approximately 3:07 PM, agents witnessed a silver 2023 Nissan Sentra bearing Arizona license plate B0A7LP (VEHICLE 3), park next to VEHICLE 2. At this time, agents witnessed the trunk of VEHICLE 2 open. At approximately 3:50 PM, agents witnessed the trunk of VEHICLE 3 opened while parked next to VEHICLE 2. Between 3:07 and 3:50 PM, both VEHICLE 2 and VEHICLE 3 remained at the Donax Avenue address. At this time, the driver of VEHICLE 3 closed his trunk and entered VEHICLE 3.

9. At approximately 3:55 PM, agents witnessed both VEHICLE 2 and VEHICLE 3 drive eastbound in tandem, on Donax Avenue towards Hollister Street. VEHICLE 2 was in front of VEHICLE 3. At approximately 3:56 PM, on the corner of Donax Avenue and Hollister Street, agents conducted a traffic stop of VEHICLE 2 and instructed the driver to exit the vehicle. At this time, the driver of VEHICLE 3 exited his vehicle and ran westbound on Donax Avenue. Agents detained the driver of VEHICLE 2 and attempted to locate the driver of VEHICLE 3. The driver of VEHICLE 3 absconded from the scene. The driver of VEHICLE 2 was identified as, AREVALO, the Defendant.

10. At approximately 4:25 PM, a United States Border Patrol agent and his Narcotic Human Detection Dog (NHDD), conducted an inspection of VEHICLE 3. At approximately 4:30 PM, the NHDD indicated a positive alert to VEHICLE 3. SAs searched VEHICLE 3 and discovered a medium sized box, taped closed, inside the trunk. SAs opened the box and discovered 14 white brick shaped packages, wrapped in cellophane plastic. A backpack was also discovered in the trunk of VEHICLE 3 containing 4 white brick shaped packages, wrapped in cellophane plastic. A shopping bag was discovered inside the trunk, containing one white bricked shaped package, wrapped in cellophane plastic. SAs found a red colored residue, similar in appearance and odor to chili oil on several of the packages located in VEHICLE 3.

11. A sample of the substance contained within the packages field tested positive for the characteristics of cocaine. In total, the 19 packages weighed approximately 20.14 kilograms (44.40 pounds) of cocaine.

12. AREVALO was placed under arrest at approximately 4:30 PM.

13. Subsequent to Defendant's arrest, law enforcement officers transported VEHICLE 2 to the San Ysidro Port of Entry. Officers inspected VEHICLE 2 using a Z-portal X-ray device and observed what appeared to be brick-shaped packages concealed beneath the floorboard of VEHICLE 2. Customs and Border Protections officers (CBPOs) located two non-factory compartments built beneath the driver-side and passenger-side floorboard of VEHICLE 2. CBPOs discovered a total of 32 white brick-shaped packages concealed within the two non-factory compartments, weighing approximately 33.96 kilograms (74.87 pounds). CBPOs also found 2 plastic bags containing 81 rounds of Luger 9 mm ammunition in the passenger-side compartment. A sample of the substance in the white brick-shaped packages from the non-factory compartments tested positive for the characteristics of cocaine. Several of the packages from the non-factory compartment were covered in a red residue, consistent in appearance with the residue found on packages seized from VEHICLE 3. CBPOs later discovered that the non-factory compartments had been wired electronically to open without requiring destruction or damage to the floor of VEHICLE 2 – in short, the compartments were designed for deposit and retrieval of contents without needing metal cutters or similar equipment.

14. The **Target Devices** were found and seized by Homeland Security Investigations Special Agents. The **Target Devices** were found by SAs in the Defendant's front and back pocket.

15. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States, and the further transport and distribution of those narcotics

within and throughout the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

16. Based upon my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on September 25, 2023, up to and including October 25, 2023.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone or tablet's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. A tablet may also be connected to cellular network services such as calling or text messaging services. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices

that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the mobile device and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1, A-2, and A-3, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Dean Page
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 27th day of October 2023.

Hon. Mitchell D. Dembin
United States Magistrate Judge

# ATTACHMENT A-3

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Gray Apple iPad
    Model: A2602    Serial: GT9VCXY47D-0006
    (**"Target Device** 3**"**)

**Target Device 3** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101 .

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephones and tablet (mobile devices) described in Attachments A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below.  The seizure and search of the mobile device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the mobile device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 25, 2023, up to and including October 25, 2023:

- a. tending to indicate efforts to manufacture, distribute, or dispense controlled substances within and throughout the United States, or to possess controlled substances with the intent to do the same;

- b. tending to indicate efforts to import controlled substances from Mexico into the United States;

- c. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States, and the further manufacture or distribution of controlled substances within and throughout the United States;

- d. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States, as well as the manufacture or distribution of controlled substances within and throughout the United States;

- e. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States and/or the manufacture or distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

      f.      tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

      g.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.